

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-10-00125-CV

_____


## LACK'S STORES, INC., Appellant

## V.

## GREGG COUNTY APPRAISAL DISTRICT AND
## GREGG COUNTY APPRAISAL REVIEW BOARD, Appellees


On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 2007-1969-B


Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Lack's Stores, Inc., a furniture retailer, brought suit in an effort to appeal a determination of the value of its inventory for the years 2003 through 2008 by the Gregg County Appraisal District and the affirmation of that evaluation by the Gregg County Appraisal Review Board.[1] The amount of ad valorem tax due to be paid by Lack's Stores is based upon the valuation of its inventory. The trial court granted a partial summary judgment in favor of Gregg CAD and dismissing Lack's Stores' claims as they pertained to the tax years 2003 through 2006, and then held a bench trial on the claims involving the 2007 and 2008 tax years. Broadly, Lack's Stores claims that the appraisers for Gregg CAD failed to apply adequate depreciation reductions to the value of the inventory (which was calculated by Gregg CAD as the cost of its acquisition by Lack's Stores). Lack's Stores tracked its administrative remedies in the tax review process, thence to the district court, and now to this Court on appeal.

Lack's Stores sets out seven issues. The first three complain of matters involved in the granting of the partial summary judgment, while the fourth complains of the failure to award Lack's Stores attorney's fees for responding to the motion for summary judgment. The fifth issue argues that the court erred (presumably in its judgment at the trial) by ruling that Gregg CAD had complied with TEX. TAX CODE ANN. § 23.12 (West 2008), in its assessment of value, although it had admitted its failure to adhere to what Lack's Stores maintained was required appraisal

---

[1]Although suit was necessarily brought against both entities, reference to the defendants and appellees will be made hereafter as the Gregg CAD.

methodology and supposedly admitted having no underlying facts to support its appraisals. The sixth issue complains that "[t]he Court erred by denying that Appellant's expert, Robert Johnson was not a certified appraiser." The seventh issue is a complaint that "the court erred by condoning, and thereby encouraging, bureaucratic failures and omissions."

**The Partial Summary Judgment**

The partial summary judgment in this case arose from a mixed traditional and a no-evidence motion. The proponent of a traditional summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). In such a motion, the question on appeal is not whether the summary judgment proof raises a fact issue with reference to the essential elements of the plaintiff's cause of action, but whether the summary judgment proof establishes that the movant is entitled to summary judgment as a matter of law. *French v. Gill*, 252 S.W.3d 748 (Tex. App.—Texarkana 2008, pet. denied). Similarly, in a no-evidence summary judgment, the question is whether the nonmovant produced any evidence of probative force to raise a fact issue on the material questions presented. *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506–07 (Tex. 2002).

In this appeal, the question to be addressed concerning the grant of the partial summary judgment begins with an examination of the meaning of certain terms used in a statute and then applying that meaning to a particular type of allegation. In this partial summary judgment, with

no specificity as to reasons or the type of judgment being granted, the trial court stated that the motion should be granted and entered a take-nothing judgment in favor of Gregg CAD and against Lack's Stores for appraisals of Lack's Stores' inventory for the tax years 2003 through 2006. Underlying that judgment is a single (and quite brief) motion for summary judgment.[2] The underlying motion requested judgment, alleging that Lack's Stores' complaints do not allege a clerical mistake as required by the statute to which Lack's Stores makes reference, but, rather, alleges a mistake in appraisal methodology.

Lack's Stores' position for relief for tax years 2003 through 2006 is based upon its interpretation of the language contained in Section 25.25 of the Texas Tax Code. TEX. TAX CODE ANN. § 25.25 (West 2008). That statute provides that an appraisal roll for previous years may only be changed if one of several enumerated circumstances is shown to exist. The relevant part of the statute is found in Section 25.25(c)(1) of the Texas Tax Code, which provides that an appraisal review board may change an appraisal roll for any of the five preceding years to correct "(1) clerical errors that affect a property owner's liability for a tax imposed in that tax year." TEX. TAX CODE ANN. § 25.25(c)(1).

Lack's Stores relies on the definition of "clerical error" employed in the Texas Tax Code:

(18)    "Clerical error" means an error:
    (A)    *that is or results from a* mistake or *failure* in writing, copying, transcribing, entering or retrieving computer data, computing, or *calculating*; or

---

[2]Note:   throughout the motion, counsel cites to the "Texas Property Code." Although the cited sections are recited correctly, they should properly reference the "Texas Tax Code."

4

(B) that prevents an appraisal roll or a tax roll from accurately reflecting a finding or determination made by the chief appraiser, the appraisal review board, or the assessor; however, "clerical error" does not include an error that is or results from a mistake in judgment or reasoning in the making of the finding or determination.

TEX. TAX CODE ANN. § 1.04(18) (West 2008) (emphasis added).

Lack's Stores' train of thought appears to be that Gregg CAD failed to use the correct appraisal method because the use of a method of appraisal that does not comport with that employed by Lack's Stores, constituting a mistake; taking this line of reasoning further, Lack's Stores maintains that the supposedly erroneous appraisal method resulted in clerical errors for the preceding five years' appraisal. Traveling further along that skein, it concludes that Gregg CAD's appraisal method constituted a clerical error and, thus, one which is permitted by statute to be corrected.

Lack's Stores' argument rests largely upon an opinion issued by the Fort Worth Court of Appeals. *See Comdisco v. Tarrant County Appraisal Dist. & Appraisal Review Bd. of Tarrant County*, 927 S.W.2d 325 (Tex. App.—Fort Worth 1996, pet. ref'd). The *Comdisco* case addressed the dichotomy between parts (A) and (B) of the section of the Texas Tax Code quoted above. The focus of that opinion, however, was the question of whether such a clerical error could be corrected only if it was one made by the taxing entity or if correction was possible if the clerical error had been made by the taxpayer. The Fort Worth court found that (A) includes such

errors by both state and taxpayer, but (B) could not include these errors. Although that ruling is entirely reasonable, its rationale is neither important to, nor applicable to this analysis.

In analyzing a statute, we begin by presuming that lawmakers intended what they enacted in the use of the statute's text, relying (whenever possible) on the plain meaning of the words chosen. *Ojo v. Farmers Group, Inc.*, No. 10-0245, 2011 WL 2112778, at *12 (Tex. May 27, 2011) (Jefferson, C.J., concurring); *Fresh Coat, Inc. v. K-2, Inc.*, 318 S.W.3d 893, 901 (Tex. 2010) ("Our 'ultimate purpose' when construing statutes 'is to discover the Legislature's intent.' Presuming that lawmakers intended what they enacted, we begin with the statute's text, relying whenever possible on the plain meaning of the words chosen." (Footnotes omitted)).

The question here is whether the language in Section 1.04(18)(A) of the Texas Tax Code can include an allegation of a failure by the taxing entity to use all of the proper considerations in calculating a tax liability, or if it is limited to the historic meaning of a "clerical error." As pointed out by Gregg CAD, this precise issue has been addressed recently by Texas' Corpus Christi Court of Appeals in a case involving an appellant apparently related to the appellant here in *Lack's Stores Valley Stores, Ltd. v. Hidalgo County Appraisal Dist.*, No. 13-10-00500-CV, 2011 WL 2475843 (Tex. App.—Corpus Christi June 23, 2011, no pet. h.) (mem.op.).

In that case, the Corpus Christi court reviewed the longstanding meaning of the term and its use within the statute; it concluded that the refusal of the appraisal district to employ the evaluation

method urged by Lack's Stores (which, as here, enhanced the depreciation of the inventory) could not meet the definition of a "clerical error."

> HCAD's failure was not a simple, inadvertent omission made while reducing a judgment into writing, but rather, the result of alleged reasoning and determination. . . . the judgment actually entered was accurately reflected . . . thus HCAD's failure to appropriately depreciate is not properly defined as a clerical error.

*Id.* at *3. Instead, the court found this claim to be an attempt to obtain a substantive reevaluation of the property's value, something which must be brought solely through the appeals process of Chapter 41 of the Texas Tax Code. TEX. TAX CODE ANN. §§ 41.01–.71 (West 2008 & Supp. 2010). Although the ruling is not controlling here, the reasoning employed has merit and is directly applicable to this case. A clerical error has always been defined as one that does not result from reasoning or determination. *See Andrews v. Koch*, 702 S.W.2d 584, 585 (Tex. 1986). A clerical error is "[a] mistake of law or of fact in a tribunal's judgment, opinion, or order." BLACK'S LAW DICTIONARY 621 (9th ed. 2009). Although the statute uses some different terms to describe the scenario, the language employed simply provides additional synonyms without altering the underlying meaning of the term.

Lack's Stores' allegations of error amount to a difference of opinion as to the proper means to evaluate property, not of a clerical mistake. Therefore, they cannot fall within the parameters of the statute under which it sought relief. The trial court did not err by granting the partial summary judgment on this issue.

7

Because Lack's Stores cannot prevail on the first issue, its second, third, and fourth issues also fail, each being predicated on the same premise. The existence of fact issues about the effect of depreciation on the value of the inventory, the failure to exclude an affidavit filed by Gregg CAD, and the failure to award Lack's Stores its attorney's fees for its efforts in response to the motion for partial summary judgment are all matters that we need not reach because of our affirmance of the partial summary judgment.

Lack's Stores' fifth issue reads as follows: "The Court erred by ruling that Appellees complied with § 23.12, Tex. Tax C. when Appellees had admitted their failure to adhere to the required underlying methodology and had admitted to having no underlying facts or data to support their 'appraisals.'"

This issue attacks the final judgment after trial. It is not strictly a complaint about the sufficiency of the evidence; rather, it is a complaint that the trial court improperly understood the meaning of the statute and that the admissions of Gregg CAD were of such a nature as to require a judgment in favor of the taxpayer. Procedurally, Lack's Stores had followed its administrative remedies by filing a protest with Gregg CAD over the last two years' taxes and participating in a hearing before the review board; nevertheless, it lost. Similarly to the claim addressed previously (but which utilized a different statute), Lack's Stores argued that the methods used to appraise the property were not valid.

The trial court conducted a bench trial and found that "[b]ased upon such evidence, the Court finds that the Gregg County Appraisal District complied with Section 23.12 of the Texas Tax Code in appraising Plaintiff's property for 2007 and 2008." The court concluded its judgment by adjudging the market property for the properties for 2007 and 2008 as the same appraised values as determined by Gregg CAD. Lack's Stores argues that: (1) Gregg CAD admitted that it had no study to determine what a retail furniture store's "Unit of Inventory" would sell for to a purchaser who would continue the business, (2) it admitted it had conducted no study of cash, open market, with no duress, and knowledgeable buyer, and (3) it had conducted no studies to determine the value of intangibles, individual characteristics, or functional and economic obsolescence.

The argument posited by Lack's Stores is that Gregg CAD should have used a "depreciated value" of inventory for tax purposes, rather than the cost of the inventory and complains that Gregg CAD failed in its duty to make an accurate appraisal of value by not taking such factors into consideration during its decision-making process. It then goes further, arguing that the use of such factors is mandatory to making an accurate appraisal and that without the use of the appraisal techniques employed by its expert, its appraisal value is invalid. Lack's Stores concludes its briefing by asking this Court to apply the factors and considerations set out by its expert and render

9

judgment for the proper amount under its expert's theory, by reference to a page attached as an appendix to its brief.[3]

In an excessive valuation case under TEX. TAX CODE ANN. § 42.25 (West 2008), the taxpayer must prove that the valuation is grossly excessive. *See Sears Roebuck & Co. v. Dallas Central Appraisal Dist.*, 53 S.W.3d 382 (Tex. App.—Dallas 2000, no pet.). Grossly excessive valuation exists when the assessed value is proven to so far exceed the fair market value as to shock the mind and raise the assumption that the value was either fraudulent or that it does not represent a fair and conscientious effort by the board to arrive at the cash market value. *Houston Lighting & Power Co. v. Dickenson Indep. Sch. Dist.*, 794 S.W.2d 402, 404–05 (Tex. App.—Texarkana 1990, writ denied). Determining whether a tax assessment is grossly excessive is a question of law. *Polk Co. v. Tenneco, Inc.*, 554 S.W.2d 918, 920 (Tex. 1977); *Houston Lighting*, 794 S.W.2d at 404. In addition to that determination, a harm analysis also applies: on appeal from a trial court's decision after its review of an appraisal review board's decision, an appealing taxpayer may prevail only if the taxpayer can show monetary "substantial injury" because of the alleged arbitrary taxation plan. *Rusk Indus., Inc. v. Hopkins County Tax Appraisal Dist.*, 818 S.W.2d 111, 116 (Tex. App.—Texarkana 1991, writ denied).

In this case, Lack's Stores neither sought nor obtained findings of fact or conclusions of law. When a party does not request findings of fact or conclusions of law, the judgment implies

---

[3]Counsel did not provide this Court with any completed calculations, or argue a particular requested result, but in his briefing merely directs us to a trial exhibit showing the result reached by its expert. Counsel similarly failed to fully brief his third issue, merely citing rules and referring to pages of pleadings.

all necessary findings of fact to support it are present, provided (1) that the proposition is one raised by the pleadings and supported by the evidence and (2) that the judge's decision can be sustained on any reasonable theory that is consistent with the evidence and the applicable law, considering only the evidence favorable to the decision. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *Jones v. Smith*, 157 S.W.3d 517 (Tex. App.—Texarkana 2005, pet. denied).

In a cross-point, Gregg CAD argues that the taxpayer has waived any complaint about excessive valuation or substantial injury because it did not challenge the determination of value made by the trial court. Although we must agree that the way the issues were briefed do not unequivocally make such an attack, we read the brief liberally. In giving latitude in a liberal reading, we read Lack's Stores' brief to argue that (due to a misunderstanding of the law by the trial court), the valuation of the inventory was incorrect and Lack's Stores requests this Court to render a judgment.[4] In summary, the taxpayer wants to have a lesser evaluation, but only tells this Court its belief as to the correct amount by reference to matters not clearly set out in its brief. Although Lack's Stores' brief is not a paragon of clarity in this regard, we believe the argument is sufficiently before us that we can act upon it.

With effort, one might also extract from Lack's Stores' brief that it intended to include a complaint that the evidence at trial was insufficient to support the judgment. That potential argument, however, is neither briefed by reference to applicable law governing such an issue, nor does it contain any attempt to provide a reasoned analysis of such a claim. Because it would be

---

[4]Appellant asks only for reversal and rendition, not reversal and remand.

11

torturous to construe the brief to address this potential issue, we will not stretch our liberality so far as to create arguments and issues that only exist as phantoms. By failing to present a point or argument, an appellant waives his right to complain of the error. The court of appeals errs if it reverses on that ground in the absence of properly assigned error. *Pat Baker Co. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998); *see* TEX. R. APP. P. 38.1(h).

The question we will first address is whether the taxpayer has shown us that the trial court misapplied the statute. Lack's Stores focuses its attention on Section 23.12(a) of the Texas Tax Code, which states that the "market value of an inventory is the price for which it would sell as a unit to a purchaser who would continue the business." TEX. TAX CODE ANN. § 23.12(a) (West 2002). The Code does not contain a specific type of analysis that must be utilized in reaching that valuation. Thus, the taxpayer is in the position of complaining that the method used by Gregg CAD is, as a matter of law, erroneous.

However, there was substantial evidence introduced in the form of testimony from several district employees regarding the evaluation methods employed by Gregg CAD relating to its choice of means to determine the value of the inventory, pertaining to its determination that the cost of the inventory was equivalent to its market value, and its determination that the values assessed for those two years actually reflect the price for which the inventory would sell as a unit to a purchaser who would continue the business.

12

In short, there is evidence that the evaluation was not arbitrary. Gregg CAD explained the method it used, the reasons for adoption of that method, and of the way that Gregg CAD applied its methodology to the particular fact situation. There was also evidence provided to the appraisal district by the taxpayer regarding the amount that the taxpayer had paid for the property being evaluated. Gregg CAD determined that under its method of calculation of value, no allowance for depreciation was warranted; from that, it determined its opinion of the fair market value of the inventory for the two years at issue.

In a variation on its argument, Lack's Stores points out that Section 23.01(b) of the Texas Tax Code requires Gregg CAD, in a mass appraisal of this nature, to comply with the Uniform Standards of Professional Appraisal Practice (USPAP). It then avers that one of Gregg CAD's answers to requests for admissions proves that Gregg CAD failed in its duties to follow USPAP guidelines. In the response cited by Lack's Stores, Gregg CAD admitted that it could not "certify compliance with USPAP during its appraisal of property owner's inventory during the tax year(s) in dispute." Lack's Stores' discovery requests then go on to demand that if Gregg CAD denied that it could not make such a certification, then Gregg CAD was to "produce with your response a copy of the District's USPAP compliance certification for its appraisal of property owner's inventory for the tax year(s) in dispute."

Gregg CAD also categorically stated, however, that it did comply with the USPAP obligations necessary to accurately appraise the owner's unit of inventory and that it had a certified

13

mass appraisal model specifically for retail furniture inventories. At most, there is a question of fact as to whether the USPAP standards actually were used. Further, contrary to Lack's Stores' position, Gregg CAD's admissions that it had not prepared a "study" on various aspects of the property evaluation is not conclusive proof that it had failed to utilize appropriate considerations in its evaluation. Due to the fact that Lack's Stores makes no direct attack on appeal upon either the factual or legal sufficiency of evidence to prove any particular matter and provides no citation to authority related to evidentiary sufficiency or attempt to apply evidentiary standards, the sufficiency of the evidence is not at bar in this case.

Lack's Stores also generally attacks Gregg CAD's "Personal Property Manual" which it acknowledges that it uses, saying that the manual is "unreliable, speculative and conclusory." Lack's Stores goes on to maintain that the property cards used by it are conclusory and that its field inspection notes are irrelevant to prove anything more than the fact that the property exists, failing to analyze the individual characteristics of the property. That allegation is used to set up an argument that Lack's Stores' expert witness was necessarily the one who was more credible and who should be believed. This position is taken even though the expert witness neither actually saw nor inspected the inventory because his "familiarity with Appellant's business practices and with Appellant's inventory databases made an inspection superfluous."

It is not precisely clear what role those statements play in this analysis, but they appear to be designed to provide support for Lack's Stores' prior suggestion that improper standards were

14

used by Gregg CAD in making its appraisal or evaluation. However, in the absence of an attack upon evidentiary sufficiency, fact-findings (implied or otherwise) are not before us for review. As such, they do not provide a convincing explanation how this shows, as a matter of law, that Gregg CAD entirely failed to use proper procedures or methodology in its evaluations.

Lack's Stores also sets up an issue complaining that Gregg CAD had admitted matters in discovery that required a different result from that which ultimately was reflected in the appraisal of Lack's Stores' inventory. However, that argument seems predicated on the ground that the sole defensible method for evaluation was that provided by Lack's Stores' expert witness and that Gregg CAD used a different method. Since there is no statutory requirement that the taxpayer's preferred method must be applied to the exclusion of the one selected by Gregg CAD, the admissions are of no consequence to the outcome of this case.

Lack's Stores complains that "[t]he Court erred by denying that Appellant's expert, Robert Johnson was not a certified appraiser." We read the argument as contending that the trial court erred by not treating Johnson as a certified appraiser. However, the fact that Johnson is not a certified appraiser under Texas law is not in dispute. Thus, the court's recognition of the name to put to Jackson's credentials is not error. In the face of this apparent side issue, Johnson was allowed to testify without restrictions in the same mode as one who qualifies as an expert. Presumably, the trial court took his testimony into account in coming to its conclusion (irrespective of whether he was a certified appraiser or whether he was not). Thus, even if some

15

error existed in the trial court's refusal to recognize Johnson as a certified appraiser, any harm resulting to Lack's Stores would not be apparent.

Lack's Stores finally alleges that bureaucratic bungling by Gregg CAD is part of a systemic failure to properly evaluate inventories and that it is generically unfair as follows: "The court erred by condoning, and thereby encouraging, bureaucratic failures and omissions." This general statement is followed by a recapitulation of all of the complaints that Lack's Stores has voiced about the evaluation of its property (including the amount of the evaluation, the means by which it was determined, and the way it was calculated), the amount of taxes assessed against it, and the trial court's refusal to address what it believes to be fundamental unfairness. In this point, there does not appear to be an issue or argument posed in such a fashion that would make it amenable to appellate review.

We affirm the judgment.

Bailey C. Moseley
Justice

Date Submitted:     September 7, 2011
Date Decided:       September 9, 2011

16